IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION

TAMARA SCHWEIGERT,

            Appellant,

vs.

TRAVIS SCHWEIGERT,

            Appellee.

CV 20–154–M–DLC

ORDER

This matter comes before the Court on appeal from the United States Bankruptcy Court for the District of Montana.  In essence, this appeal asks whether, under Montana law, Appellant Tamara Schweigert has a valid lien in Appellee Travis Schweigert's brands and branded livestock.  She does not.  Accordingly, the Court will affirm confirmation of Mr. Schweigert's Chapter 13 plan and all contested ancillary orders.

## BACKGROUND

This appeal stems from a siblings' quarrel.  The Schweigerts, who are brother and sister, previously engaged in ranching operations together in Montana.  (Doc. 4-1 at 8.)  In 2016, problems arose when Ms. Schweigert accused Mr. Schweigert of misappropriating proceeds from the sale of cattle.  (Docs. 4 at 7; 4-1 at 5.)  A settlement agreement was executed, seemingly putting the matter to rest.

(*Id.* at 5–7.)  Unfortunately, the dispute did not end there.

Instead, Ms. Schweigert subsequently sued Mr. Schweigert in Montana state court alleging he had breached his obligations under the settlement agreement.  (*Id.* at 11.)  And she prevailed, winning on summary judgment, and obtaining final judgment in the amount of $42,432.86.  (*Id.* at 21–22.)  With judgment in hand, Ms. Schweigert began the process of attempting to collect.  In furtherance of this effort, she took two critical steps.

First, she recorded her judgment with the Lake County Clerk and Recorder's Office.  (*Id.* at 114.)  Second, she requested that the Montana Department of Livestock file her judgment as a lien against Mr. Schweigert's registered brands. (*Id.* at 23.)  The Department refused, requesting additional documentation including a writ of execution.  (*Id.* at 26.)  Accordingly, Ms. Schweigert obtained a writ of execution from the state district court that issued the judgment.  (*Id.* at 32– 33.)

This writ of execution states, in relevant part, that "you, the Montana Department of Livestock, Brands Enforcement Division, are hereby directed to make" $42,432.86 "due on the judgment . . . to satisfy the judgment out of brands owned or maintained by" Mr. Schweigert.  (*Id.* at 33.)  It further provides "[y]ou are directed to return this writ not less than 10 days nor more than 120 days after the date of receipt."  (*Id.*)  Ms. Schweigert provided the Department with the writ

2

of execution and a document entitled Notice of Security Interest Covering Branded

Livestock, which it then filed.  (*Id.* at 34–38.)  The notice purports to extend to all

branded livestock bearing Mr. Schweigert's brand.  (*Id.* at 38.)  After taking the

foregoing steps, but before any substantive collection efforts could be undertaken,

Mr. Schweigert initiated bankruptcy proceedings.

Mr. Schweigert filed his Chapter 13 petition on March 10, 2020.  (Doc. 1-1

at 1.)  On July 1, 2020, Ms. Schwiegert filed the proof of claim that is the subject

of this appeal, asserting that she possessed a $42,432.85 secured claim against Mr.

Schweigert's brands and branded livestock.  (Doc. 4-1 at 51.)[1]  To justify its

existence, this proof of claim pointed to the state court judgment, writ of execution,

and notice, described above.  (*Id.*)  Mr. Schweigert objected to this proof of claim,

contending that the underlying claim was unsecured and urging the bankruptcy

court to disallow Ms. Schweigert's "claim as a secured claim and instead allow[] it

as a general unsecured claim in the amount of $42,432.86."  (*Id.* at 62–64, 103–

06.)  Ms. Schweigert responded by contending that her claim stemmed from a

valid lien under Montana law, and was thus properly allowable as a secured claim.

(*Id.* at 70–76; 112–29.)

The bankruptcy court held a hearing on the proof of claim and

---

[1] Ms. Schweigert's original proof of claim listed a "District Court Judgment Lien" as its source, which as discussed below, only extends to Mr. Schweigert's real property.  Mr. Schweigert avoided this claim on the basis of a homestead exemption under Montana law.  (Doc. 4 at 11.)

corresponding objection before concluding that Ms. Schweigert "has not established she has a valid lien in [Mr. Schweigert's] brand[s] or branded livestock." (Doc. 1-2 at 1, 10.) As such, it sustained Mr. Schweigert's objection and afforded Ms. Schweigert "a general unsecured claim in the amount of $42,432.86." (Doc. 1-3 at 1.)

At this same time, Mr. Schweigert filed a proposed Chapter 13 plan, omitting a secured claim from Ms. Schweigert's in the amount of $42,432.86. (Doc. 4-1 at 41–45.) Ms. Schweigert contested confirmation of the plan based on such omission. (*Id.* at 53–55.) The bankruptcy court held a hearing, and subsequently issued an order noting that its prior order refusing to allow Ms. Schweigert a secured claim resolved her outstanding objection to confirmation of the plan. (*Id.* at 142.) The bankruptcy court then examined Mr. Schweigert's proposed plan, found that it conformed to the bankruptcy code, and entered a confirmatory order. (*Id.* at 142–45.) Ms. Schweigert appeals. (*See generally* Doc. 1.)

## JURISDICTION

Whether an appeal falls within this Court's jurisdiction is a threshold issue in every case and one "the court is bound to ask and answer for itself, even when not otherwise suggested, and without respect to the relation of the parties to it." *Great S. Fire Proof Hotel Co. v. Jones*, 177 U.S. 449, 453 (1900). District courts,

4

such as this one, are authorized to hear appeals "from final judgments, orders, and decrees" issued by bankruptcy courts within their judicial district.  28 U.S.C. § 158(a)(1).  This includes orders confirming Chapter 13 plans, which are final orders within the meaning of 28 U.S.C. § 158(a)(1).  *Bullard v. Blue Hills Bank*, 135 S.Ct. 1686, 1692 (2015).

Importantly, however, this jurisdiction is permissive in that it must be specifically invoked by the parties to the appeal.  28 U.S.C. § 158(c)(1).  This is accomplished through the timely filing of "a statement of election that conforms substantially to the appropriate Official Form."  Fed. R. Bankr. P. 8005(a)(1).  The Advisory Committee Note to Rule 8005 instructs that, "[f]or appellants, the statement is included in the Notice of Appeal Official Form."  Merging the foregoing together, this Court's jurisdiction to hear an appeal from a bankruptcy court depends on whether: (1) the order being appealed is within the Court's statutory jurisdiction; and (2) the parties have elected to invoke such jurisdiction.

Both requirements are satisfied in this case.  Ms. Schweigert appeals from the final order entered by the bankruptcy court confirming Mr. Schweigert's Chapter 13 plan and, in her Notice of Appeal, specifically invoked this Court's appellate jurisdiction.  (Docs. 1 at 3; 1-4; 4 at 6.)  Consequently, this Court possesses the jurisdiction necessary to adjudicate this appeal.

## STANDARD OF REVIEW

Before proceeding to the merits, this Court must determine the standard of review applicable to the lower court rulings at issue.  When acting in its appellate capacity under 28 U.S.C. § 158(c)(1), this Court reviews legal conclusions *de novo* and factual conclusions for clear error.  *In re Olshan*, 356 F.3d 1078, 1083 (9th Cir. 2004).  *De novo* review requires this Court to "consider a matter anew, as if it has not been heard before, and as if no decision had been rendered previously."  *In re Smith*, 435 B.R. 637, 643 (B.A.P. 9th Cir. 2010).[2]  Clear error review, on the other hand, is "highly deferential" and reversal is only proper if the Court has "a definite and firm conviction that a mistake has been committed."  *In re Sussex*, 781 F.3d 1065, 1071 (9th Cir. 2015).

The standard of review applied to mixed questions of law and fact presents a more difficult judicial quandary.  *See, e.g., U.S. Bank Ass'n ex rel. CWCapital Asset Mgmt. LLC v. Village at Lakeridge, LLC*, 138 S.Ct. 960 (2018).  Mixed questions of law and fact are those which require the Court to apply an established set of facts to an undisputed rule of law.  *Id.* (citing *Pullman-Standard v. Swift*, 456 U.S. 273, 289 n.19 (1982)).  Further complicating the matter, "[m]ixed questions

---

[2] The Court takes this opportunity to note that while it relies on opinions from the Ninth Circuit Bankruptcy Appellate Panel throughout its opinion, such authority provides only persuasive value and does not constitute binding precedent.  *Bank of Maui v. Estate Analysis, Inc.*, 904 F.2d 470, 472 (9th Cir. 1990) (holding "it must be conceded that BAP decisions cannot bind the district courts themselves. As article III courts, the district courts must always be free to decline to follow BAP decisions and to formulate their own rules within their jurisdiction").

are not all alike," and some are properly afforded the more deferential clear error review, while others must be reviewed *de novo* "without the slightest deference." *Id.* at 965.

The correct "standard of review for a mixed question all depends—on whether answering it entails primarily legal or factual work." *Id.* at 967. For predominately legal endeavors, such as "when applying the law involves developing auxiliary legal principles of use in other cases," *de novo* review must be undertaken. *Id.* When the Court embarks on a fact-based journey, however, requiring it "to marshal and weigh evidence, make credibility judgments, and otherwise address . . . multifarious, fleeting, special, narrow facts that utterly resist generalization," clear error review is warranted. *Id.*

The following legal principles can be summarized as follows. Where an appellant takes issue with the lower court's factual conclusions, a question of fact is presented that this Court must review for clear error. Where an appellant takes issue with the lower court's legal conclusions, a question of law is presented that this Court must review *de novo*. Where an appellant takes issue with the lower court's comparison of the facts to the law (or vice versa), a mixed question of law and fact is presented and this Court will only review for clear error if resolution of the question depends more on an interpretation of the facts than the law.

The Court does not say all of this for nothing.  Instead, such a recitation is necessary because this appeal presents questions of fact, questions of law, and mixed questions of fact and law.  Importantly, one mixed question—whether the facts demonstrate Ms. Schweigert has a valid lien in Mr. Schweigert's brands and branded livestock—presents the central issue for review.  As demonstrated below, resolution of this mixed question requires the Court to apply a set of well-defined facts to Montana's law regarding the creation of valid liens in personal property. Thus, this Court must determine whether the bankruptcy court's holding on this mixed question is properly reviewed *de novo* or for clear error.  Recall the answer to that question depends on whether "answering it entails primarily legal or factual work." *Village at Lakeridge*, 138 S.Ct. at 967.  As will be seen, this question is "about as [legal] sounding as any mixed question gets" and its resolution depends more significantly on the law than on the facts.  *Id.* at 968.  Consequently, the Court will review this mixed question *de novo*.[3]

## ANALYSIS

Ms. Schweigert raises three issues on appeal, including whether the bankruptcy court erred in: (1) concluding that she lacked a secured claim in Mr.

---

[3] It is worth mentioning that the parties do not devote significant (or really any) argument on the point just lengthily addressed by the Court.  Ms. Schweigert characterizes the issues presented as legal questions necessitating *de novo* review.  (Doc. 4 at 6.)  Mr. Schweigert agrees.  (Doc. 7 at 6.)  Alas, for the reasons stated above, the Court charts its own course to the same destination— *de novo* review of the principal issue before it.

Schweigert's brands and branded livestock; (2) sustaining Mr. Schweigert's objection to her proof of secured claim; and (3) confirming Mr. Schweigert's Chapter 13 plan.  (Doc. 4 at 6.)  Resolution of issues two and three depends on resolution of issue one—whether Ms. Schweigert possessed a valid lien in Mr. Schweigert's brands and branded livestock.  It is to this question the Court now turns.

## I.   THE CHAPTER 13 PROCESS.

In order to fully understand the context of this appeal, it is necessary to outline the basics of a Chapter 13 bankruptcy proceeding.  "A Chapter 13 case begins, like all other bankruptcy cases, with the filing of a petition and the creation of an estate, which comprises the debtors' legal and equitable interests in property."  *In re Barker*, 839 F.3d 1189, 1193 (9th Cir. 2016).  Chapter 13 proceedings "encourage financially overextended debtors to use current and future income to repay creditors in part, or in whole, over the course of a three to five-year period."  *In re Blendheim*, 803 F.3d 477, 485 (9th Cir. 2015).  This is accomplished through a Chapter 13 plan approved by the bankruptcy court, something discussed in detail below.  *Id.* at 485–87.

In Chapter 13 proceedings, there are three indispensable players.  First, there is the debtor, who "initiates the Chapter 13 proceeding, proposes the reorganization plan, and (if all goes well) makes payments in accordance with it."  *In re Cumbess*,

960 F.3d 1325, 1331 (11th Cir. 2020).  The debtor's endgame is to "obtain court approval of a plan that provides for the payment of as little as possible to creditors and to emerge at the end of the process with as much property and as little debt as possible."  *Id.* (internal citations and alterations omitted).  Second, there are "the creditors—the people or entities who have claims against the debtor."  *Id.*  Their goal is "counter to the debtor's" and seeks to "maximize their recoveries by having the debtor pay as much as possible."  *Id.*  Finally, there is the trustee who helps administer the case.  *Id.*

Creditors, both secured and unsecured, who wish to obtain distributions under a Chapter 13 plan must file a valid proof of claim.  *Barker*, 839 F.3d at 1193–94; *see also* 11 U.S.C. § 501; Fed. R. Bankr. P. 3002(a).  What constitutes a "claim" is interpreted broadly to include virtually any "right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured."  11 U.S.C. § 101(5); *see also In re SNTL Corp.*, 380 B.R. 204, 216 (B.A.P. 9th Cir. 2007).  Once a proof of claim is filed, the bankruptcy court must run the claim through the allowance process.  *Blendheim*, 803 F.3d at 484–85.  It is only after the bankruptcy court formally allows the claim that it can find its way into the Chapter 13 plan.  *Id.*

The allowance process "asks: what is the maximum dollar amount of a

creditor's claim that the Bankruptcy Code will recognize for the purpose of a pending bankruptcy case?" *In re Pruitt*, 401 B.R. 546, 555 (Bankr. D. Conn. 2009).  The initial step in the allowance process requires a search for objections. *See* 11 U.S.C. § 502(a).  If no objections to the proof of claim are filed, then the claim is "deemed allowed," and the allowance process ends.  *Id.*  On the other hand, if a debtor properly objects to a proof of claim, as was done by Mr. Schweigert in this case, the allowance process intensifies.  *Id.* § 502(b); *see also* Fed. R. Bankr. P. 3007.  Following an objection, the bankruptcy court must conduct a hearing with the parties and "determine the amount of such claim . . . and shall allow such claim in such amount, except to the extent that" the claim is of a nature specifically excluded by the bankruptcy code.  *See* 11 U.S.C § 502(b).

If, after the allowance process, the claim is deemed allowable then it must undergo the characterization process.  *Pruitt*, 401 B.R. at 557.  The characterization process asks, to what extent will the allowed claim be treated as "secured for the purposes of the bankruptcy case?"  *Id.* (internal alterations omitted).  The first step in the characterization process requires a determination of whether the allowed claim is "secured by a lien on property in which the estate has an interest."  11 U.S.C. § 506(a).  If so, then the bankruptcy court must apply § 506's valuation calculation, to ascertain "the extent [to which the claim's value] exceeds the value of the property that secures it."  *In re Boukatch*, 533 B.R. 292,

296 (B.A.P. 9th Cir. 2015).

The bankruptcy court then utilizes the information derived from this "valuation procedure" to "bifurcate[] creditors' claims into 'secured claims' and 'unsecured claims'" for purposes of the bankruptcy estate. *Id.* at 295–96. Obviously, a secured designation is preferable, as secured claims generally enjoy "first priority in bankruptcy cases." *In re Sanders*, 341 B.R. 47, 52 (N.D. Ala. 2006); *but see* 11 U.S.C. § 1322(b)(4) (permitting a Chapter 13 plan to "provide for payments on any unsecured claim to be made concurrently with payments on any secured claim or any other unsecured claim").

To be clear, however, secured creditors who have filed proof of their claim and survived the allowance and characterization processes can elect to have their claim omitted from the final Chapter 13 plan and secured creditors who do not file a proof of claim may "generally ignore the bankruptcy proceeding" altogether. *Blendheim*, 803 F.3d at 485; 11 U.S.C. § 1325(a)(5). Those secured creditors are free to instead avail themselves of "the right of foreclosure" that "the lien guarantees [them] under non-bankruptcy law." *Blendheim*, 803 F.3d at 485. Conversely, unsecured creditors must file a valid proof of claim to "collect a debt from a debtor filing a Chapter 13 bankruptcy petition." *Barker*, 839 F.3d at 1193.

The foregoing culminates in the confirmation of a Chapter 13 plan. Within 14 days of filing a Chapter 13 petition, the debtor must file a proposed plan

conforming with the bankruptcy code.  11 U.S.C. §§ 1321–22; Fed. R. Bankr. P. 3015; *see also Blendheim*, 803 F.3d at 485.  "A party in interest may object to confirmation of the plan" and the bankruptcy court must "hold a hearing on confirmation of the plan."  11 U.S.C. § 1324.  If after the hearing and upon review, the bankruptcy court finds that the plan satisfies the applicable legal requirements, it must confirm it.  *Id.* § 1325(a).

Conformation binds the debtor and creditors to the plan's terms and "is entitled to *res judicata* effect . . . foreclosing relitigation of any issue actually litigated by the parties."  *Blendheim*, 803 F.3d at 486; 11 U.S.C. § 1327. Confirmation also triggers the distribution of payments to included creditors in conformance with the plan.  11 U.S.C. §§ 1326, 1327(a).  Obtaining a confirmed plan is an indispensable step for any Chapter 13 debtor, because "[i]f the debtor complies with his obligations under the confirmed plan and makes all the required payments, the court will grant the debtor a discharge—if appropriate—and close the case."  *Blendheim*, 830 F.3d at 487 (citing 11 U.S.C. § 350(a)).  With this framework in mind, the Court turns to the central issue for review.

## II.   WHAT IS A SECURED CLAIM?

In essence, Ms. Schweigert maintains that the bankruptcy court erred in designating her claim unsecured.  Important for this appeal, what constitutes a "secured" or "unsecured" claim for bankruptcy purposes varies depending on the

precise context.  The bankruptcy court began its analysis by stating a "claim cannot be a 'secured claim' for purposes of § 506(a) unless it is secured by a 'lien' on property in which the bankruptcy estate has an interest."  (*Id.*)  The parties do not seem to take issue with this proposition.  (Docs. 4 at 22–23; 7.)  Given the posture of this case, the Court finds reliance on § 506(a) misplaced.

Section 506(a) of the bankruptcy code provides that "[a]n allowed claim . . . secured by a lien on property in which the estate has an interest . . . is a secured claim . . . ."  11 U.S.C. § 506(a).  It is tempting to rely on this provision for the definition of a secured claim.  In other words, Ms. Schweigert would enjoy a secured claim if her claim is secured by a lien on property in which the estate has an interest.  But the Supreme Court has recognized that "by its terms," § 506(a) "is not a definitional provision."  *Dewsnup v. Timm*, 502 U.S. 410, 415 (1992).  Accordingly, it has been held that it "is neither necessary nor appropriate to contort § 506(a) into a definitional provision."  *In re Brown*, 339 B.R. 818, 821 (Bankr. S.D. Ga. 2006); *see also In re Trejos*, 374 B.R. 210, 220 (B.A.P. 9th Cir. 2007) (formally adopting this position); *but see In re White*, 352 B.R. 633, 643 (Bankr. D. La. 2006).

Instead, as described above, § 506(a) provides "a valuation procedure" that "bifurcates creditors' claims into 'secured claims' and 'unsecured claims'" depending on a separate valuation calculation.  *Boukatch*, 533 B.R. at 295–96.  In

14

this way, § 506(a) governs the *treatment* of secured claims while the *existence* of a secured claim must be ascertained by looking outside the bankruptcy code.  *Trejos*, 374 B.R. at 220; *see also In re Wright*, 492 F.3d 829, 830 (7th Cir. 2007).  The proper location of this inquiry is state law.  *Raleigh v. Illinois Dept. of Revenue*, 530 U.S. 15, 20 (2000); *Pruitt*, 401 B.R. at 554–55 (holding "[t]he pre-existing 'claim' i.e. the 'right to payment', *see* 11 U.S.C. § 101(5), that a creditor brings to a bankruptcy case necessarily has its *origins* in State Law").

In this way, sections 502 and 506 provide "the ultimate amount, character and class of a creditor's *claim for purposes of treatment in the bankruptcy case*" while state law governs whether the claim enters the bankruptcy estate with a secured designation.  *Pruitt*, 401 B.R. at 553–55 (emphasis original). Accordingly, "[u]nder the Bankruptcy Code, 'secured claim' is thus a term of art; not every claim that is secured by a lien on property will be considered a 'secured claim,'" within the bankruptcy estate despite its treatment as a secured claim under applicable state law.  *In re Zimmer*, 313 F.3d 1220, 1223 (9th Cir. 2002).

To this end, a bankruptcy court presented with a proof of claim alleging the existence of a secured claim must first determine whether the claim is "secured" under the law of the state which ostensibly creates the claim.  *Raleigh*, 530 U.S. at 20 (holding that the "basic federal rule in bankruptcy is that state law governs the substance of claims"); *see also In re Price*, 562 F.3d 618, 624 (4th Cir. 2009); *In re*

*Prestige Ltd. Partnership-Concord*, 234 F.3d 1108, 1114–18 (9th Cir. 2000).

Then, if the bankruptcy court determines that a creditor's claim is "secured"

through application of applicable state law, it applies § 506(a) to determine the

extent to which such claim will be treated as "secured" for the purposes of the

bankruptcy proceeding. *See Nobleman v. American Sav. Bank*, 508 U.S. 324, 328–

29 (1993); *see also Thissen v. Johnson*, 406 B.R. 888, 894 (E.D. Cal. 2009).[4]

Based on the foregoing § 506(a) does little, if any, work in this appeal.

Instead, the Court's inquiry is limited to whether Ms. Schweigert has secured claim

under Montana law by virtue of a lien in Mr. Schweigert's brands and branded

livestock. In other words, this Court declines to rely on § 506 for what constitutes

a "secured claim" and instead looks to exclusively Montana law. Although

referencing § 506(a) in passing, this state law inquiry is precisely what the

bankruptcy court engaged in below and the parties engage in on appeal. (Docs. 1-2

at 4–10; 4 at 18–19; 7 at 11–19.)[5] Accordingly, this Court's inquiry begins and

---

[4] Recall, this depends on "the extent [to which the claim's value] exceeds the value of the property that secures it." *Boukatch*, 533 B.R. at 296; *Nobleman*, 508 U.S. at 328 (holding that after ascertaining a claim's status under state law one correctly looks "to §506(a) for a judicial valuation of the collateral to determine the status of the bank's secured claim" for bankruptcy purposes). This valuation procedure is "unique to bankruptcy jurisprudence" and "is rarely encountered outside the bankruptcy forum." *Pruitt*, 401 B.R. at 558–59. As such, it is important to recognize that in the bankruptcy context a claim may be treated as "secured" or "unsecured" for reasons different than would be necessary to afford it the same treatment as a matter of state law.

[5] Importantly, had the bankruptcy court found that Ms. Schweigert possessed a secured claim under Montana law, then it does not follow that Ms. Schweigert would automatically enjoy a $42,432.86 secured claim as a matter of bankruptcy law. Instead, the bankruptcy court would have been required to apply § 506(a) to determine, for example, whether the claim at issue

ends with a determination of whether Ms. Schweigert possesses a secured claim

under Montana law, without reliance on § 506.

### III.   SECURED CLAIMS UNDER MONTANA LAW.

Under Montana law, a creditor's possession of a valid lien in the debtor's

property generally renders them a secured creditor to the extent of the lien.  *See*

*State v. Skyline Broads., Inc.*, 211 P.3d 189, 193 (Mont. 2009) (characterizing

party as "secured creditor" by virtue of valid lien).  "[L]iens are creatures of

statute."  *Jones v. Arnold*, 900 P.2d 917, 923 (Mont. 1995).  And Montana statute

broadly provides for the creation of liens by contract or "operation of law." Mont.

Code Ann. § 71-3-102.  Relevant here, one such operation of Montana law

provides for the creation of judicial liens.

### A.   MONTANA LAW REGARDING THE CREATION AND REACH OF JUDGMENT LIENS.

Once a state court judgment is docketed "it becomes a lien upon all real

property of the judgment debtor that is not exempt from execution in the county

and that is either owned by the judgment debtor at the time or afterward acquired

by the judgment debtor before the lien ceases."  Mont. Code Ann. § 25-9-301(2).

That is, upon entry of judgment, a judgment creditor possesses a lien in some of

the judgment debtor's real property and enjoys secured status in such real property

---

"exceeds the value of the property that secures it" and bifurcate such claim into secured and
unsecured portions accordingly.  *Zimmer*, 313 F.3d at 1223.

during the life of the lien.  This lien is classified as a judgment lien.  *Id.* § 71-3-1504.

But, by the statute's very terms, the filing of a state court judgment does not have a similar effect as to a judgment debtor's personal property—such as the brands or branded livestock at issue here—and no judgment lien in such property arises.  *In re Estate of Bolinger*, 971 P.2d 767, 780 (Mont. 1998) (interpreting Montana Code Annotated §25-9-301(2)); *Hanson v. Estate of Bjerke*, 95 P.3d 704, 706 (Mont. 2004) (defining personal property as "everything that is the subject of ownership, not coming under denomination of real estate").  Accordingly, the Court must look elsewhere in ascertaining how judgment liens extend to a judgment debtor's personal property.

The bankruptcy court's prior ruling in *In re Murdock* proves quite instructive on this point.  1993 WL 943266 (Bankr. D. Mont. 1993).  There, the bankruptcy court examined Montana law to determine when a judgment lien arises in a judgment debtor's personal property.  The starting point is Montana Code Annotated § 25-13-201, which provides that judgments for money, such as the one obtained by Ms. Schweigert here, "may be enforced by writ of execution."  Montana law further provides that a judgment debtor's personal property is "liable to execution" and "may be attached on execution, in like manner as upon writs of attachment."  Mont. Code Ann. § 25-13-501.  Critically, however, such personal

18

"property is not effected by the execution" until a levy has occurred.  *Murdock*,

1993 WL 943266 at 5 (citing Mont. Code Ann. § 25-13-501).

Currently, as was true when *Murdock* was decided, "Montana Code

Annotated does not define 'levy.'"  *Id.* at 6; *but see In re Marriage of Cini*, 368

Mont. 411 (Mont. 2012) (unpublished) (holding that a "levy of execution"

occurred when the judgment debtor was served with a "Notice of Levy on and

Seizure of Property; Right to Claim Exemptions; and Execution # 1" following the

issuance of a writ of execution).  But, as the bankruptcy court noted in *Murdock*,

the historical purpose of "a levy [is] to subject the property to the custody of the

law so that a judgment debtor might not divert it to any other purpose."  1993 WL

943266 at 6 (citing *Travelers Ins. Co. v. Lawrence*, 509 F.2d 83, 89 (9th Cir.

1974)).  As such, "levy" can be properly defined as "to take control of or create a

lien upon property under any judicial writ or process."  *Id.*

Under Montana law, one such method of creating "a lien upon property

under any judicial writ or process" is through the attachment process.  *See* Mont.

Code Ann. § 27-18-307 ("[a]ll liens by attachment shall accrue at the time the

property of the defendant shall be attached by the officer charged with the

execution of the writ").  As noted above, Montana Code Annotated § 25–13–501

refers "parties executing judgments to the attachment statutes for instruction on

how to attach the various types of property on execution."  *Murdock*, 1993 WL

943266 at 11.  Montana's attachment statutes provide for the creation of lien in personal property once such personal property is attached, with the proper method of attachment depending on the status of such property.  *Id.* at 8–9; Mont. Code Ann. §§ 27-18-307, 404–05.

For example, personal property "capable of manual delivery" and not "in the possession of a third person" must be attached "by taking it into custody."  Mont. Code Ann. § 27-18-404.  Personal property that is either "not capable of manual delivery" or is "in the possession of a third person must be attached by leaving with the" judgment debtor or third person "a copy of the writ and a notice" that such personal property is "attached in pursuance of the writ."  *Id.* § 27-18-405(1). In sum, once the correct method of attachment is accomplished, the judgment creditor obtains a lien in the judgment debtor's personal property encompassed by the corresponding writ of execution.  *See Murdock*, 1993 WL 943266 at 10.

This is a long way of stating the following.  Under Montana law, entry of a judgment does not provide the judgment creditor with a lien in the judgment debtor's personal property (unlike some of the judgment debtor's real property). Instead, Montana law instructs judgment creditors who wish to obtain a lien in the debtor's personal property to avail themselves to Montana's statutes regarding pre-judgment attachment.  Under those statutes a lien is created at the time of attachment, but the precise method of attachment depends on the status of the

20

property at issue.  With these principles in mind, it is worth inquiring into what occurred here.

It is undisputed that Ms. Schweigert possesses both a money judgment against Mr. Schweigert and a corresponding writ of execution.  (Doc. 4-1 at 24–25, 32–33.)  The writ of execution provides that Ms. Schweigert has a judgment in the amount of $42,432.86 and directed the "Montana Department of Livestock . . . to make this sum due . . . out of the brands owned or maintained" by Mr. Schweigert with the Department.  (*Id.* at 32–33.)  Additionally, it instructs the Department to "return this writ not less than 10 days nor more than 120 days after the date of receipt."  (*Id.* at 33.)

Critically, however, despite the existence of the writ, nothing in the record indicates that Ms. Schweigert took any of the steps outlined above which are necessary to extend her judgment lien to Mr. Schweigert's personal property by virtue of Montana's attachment statutes (i.e. seizure or leaving of notice).  Seemingly recognizing this, Ms. Schweigert maintains that Montana law provides another method of obtaining a lien in Mr. Schweigert's brands and branded livestock—the filing of certain documents with the Montana Department of Livestock pursuant to Administrative Rule of Montana 32.15.601.  As discussed below, this argument is without merit.

### B.   THE CREATION (OR NON-CREATION) OF LIENS BY OPERATION OF ADMINISTRATIVE RULE OF MONTANA 32.15.601.

Before the bankruptcy court, Ms. Schweigert unsuccessfully relied on Montana Administrative Rule 32.15.601 ("Rule") for the proposition that providing the Department with a writ of execution and other documents was sufficient to establish a valid lien in Mr. Schweigert's brands and branded livestock.  (Doc. 1-2 at 10; 4-1 at 123.)  This remains her central argument on appeal.  (Doc. 4 at 14–20, 27.)  Conversely, Mr. Schweigert maintains that there "is no statutory basis . . . that submitting a writ of execution to the department creates a lien on a brand or on livestock."  (Doc. 7 at 10.)  The bankruptcy court agreed by concluding that, first, the Rule does not, as a matter of law, provide for the creation of a lien, and, second, even if it did, Ms. Schweigert had failed comply with the Rule's requirements.  (Doc. 1-2 at 8–10.)  The Court embarks on *de novo* review of these conclusions.

As an initial matter, the Court agrees with the bankruptcy court that a review of the general principles underlying Montana's administrative rules is in order. (Doc. 1-2 at 7–8.)  In general, a state agency only has the power to adopt an administrative rule when specifically afforded such power by statute.  Mont. Code Ann. § 2-4-305(3).  Even then, the rule adopted is only valid if it is: (1) "consistent and not in conflict with the statute;" and (2) "reasonably necessary to effectuate the purpose of the statute."  *Id*. § 2-4-305(6); *see also Gold Creek Cellular of Mont.*

*Ltd. v. Montana Dept. of Rev.*, 310 P.3d 533, 535–36 (Mont. 2013).  Importantly,

"it is axiomatic in Montana law that a statute cannot be changed by administrative

regulation." *Bick v. Montana Dept. of Justice, Div. of Motor Vehicles*, 730 P.2d

418, 420 (Mont. 1986).  In other words, administrative rules in Montana do not

alter the law, they simply implement and interpret it, completing "absent but

necessary details, and [resolving] unexpected problems." *Core-Mark Int'l, Inc. v.

Montana Bd. of Livestock*, 329 P.3d 1278, 1285 (Mont. 2014).

The Rule at issue provides that a "brand mortgage (lien) covering branded

livestock must be filed with the Department of Livestock." Mont. Admin. R.

32.15.601(1).  In addition, the Rule provides that there "are two ways to file a

brand mortgage: (1) all brand owners of the brand sign the brand mortgage papers;

or (2) by Writ of Execution directing the mortgage be placed on the brand to

enable the department to comply with a court order." Mont. Admin. R.

32.15.601(3).  For the purposes of the Rule a "brand mortgage may be referred to

as a notice of security agreement or lien on branded livestock." Mont. Admin. R.

32.15.601(1)(b).

The Rule justifies its existence by pointing to Montana Code Annotated §

81-8-304.  *Id.* (listing "81-8-304, MCA" as both its "specific grant of rulemaking

authority" and "the specific section . . . in the Montana Code Annotated" it

"purports to implement," in accordance with Montana Code Annotated § 2-4-

305(3)).  This statute provides:

> The department shall charge a fee for filing and listing the notices of security agreements for each recorded brand listed in each security agreement and for filing and listing each notice of satisfaction, renewal, or assignment of the security agreement for each recorded brand listed. *The fees shall be set by rules adopted pursuant to the Montana Administrative Procedure Act*, upon the basis of actual cost to the department for each brand listed. All fees shall be paid into the state special revenue fund for the use of the department.

Mont. Code Ann. § 81–8–304 (emphasis added).  As such, a plain reading of the authorizing statute makes clear that the scope of the Department's rulemaking authority as to § 81–8–304 extends to setting fees for the filing and listing of security agreements.

As noted above, Ms. Schweigert relies on the Rule for the proposition that "to 'create' a security interest against a brand (i.e., a secured lien), a person must . . . present a Writ of Execution sufficient to allow the Department of Livestock to file a lien." (Doc. 4 at 20.)  Because she accomplished this, so the argument goes, the bankruptcy court erred in concluding that she lacked a valid lien in Mr. Schweigert's brands and branded livestock.  (*Id.* at 20–33).  The Court disagrees.

First, a plain reading of Rule establishes that it does not create a lien, it presupposes the existence of one.  The Rule simply states that any "brand mortgage (lien) covering branded livestock must be filed with the Department of Livestock," enumerates the two methods of accomplishing such filing, and mandates a fee.  Mont. Admin. R. 32.15.601(1)–(3).  No plausible reading of this

Rule lends itself to the interpretation that it creates a lien that does not already exist.  Thus, Ms. Schweigert's argument that the Rule provides for the creation of a security interest through the filing of a writ of execution with the Department is without merit.  *De novo* review compels the same conclusion as the bankruptcy court as to this point of law.

Second, this Court agrees with the bankruptcy court that even if following the procedure enumerated by the Rule established a lien, which it does not, Ms. Schweigert has not accomplished such procedure in this case.  Recall the Rule provides that one may file a brand mortgage by "Writ of Execution directing the mortgage be placed on the brand to enable the department to comply with a court order."  Mont. Admin. R. 32.15.601(3)(b).  Critically, as the bankruptcy court noted, the writ of execution obtained by Ms. Schweigert contains no language directing the Department to place a mortgage on Mr. Schweigert's brand, nor is there any indication the writ is necessary for it to comply with a court order.  (Doc. 1-2 at 9; 4-1 at 32–33.)  As such, even if filing the sort of writ of execution contemplated by the Rule was sufficient to create a lien, Ms. Schweigert filed no such writ here.

As a final matter, even if the Rule did provide for the creation of a lien, which it does not, this Court is skeptical that it could validly do so.  As discussed above, administrative rules cannot alter the law.  Unless specifically authorized by

25

statute to do so, an administrative rule cannot provide for the creation of a lien. This is the Legislature's purview, not the purview of state agencies. *Jones*, 900 P.2d at 923; *see also* Mont. Code Ann. § 71-3-102.  Accordingly, even if the Rule specifically provided for the creation of a lien, rather than simply providing mechanisms for filing a lien, the Court is unpersuaded the Department can lawfully do so without the sort of explicit legislative authorization absent in this case. Mont. Code Ann. § 81–8–304.  Rather, to the extent the Rule provides for the creation of a lien, it would be a void as an improper exercise of agency rulemaking authority.

Ultimately, it can be said that not only does Montana Administrative Rule 32.15.601 not create liens, but it would also be invalid to extent that it did. Because Ms. Schweigert, by her own admission, neither took possession of Mr. Schweigert's brands or branded livestock or otherwise provided him with a copy of the writ of execution and notice of attachment, she cannot possibly claim to have a lien in his personal property under the normal function of Montana law, as outlined at length above.  In short, the bankruptcy court did not err in concluding Ms. Schweigert lacked a valid lien in Mr. Schweigert's brands or branded livestock under Montana law.

The Court need not go any further.  Because the bankruptcy court correctly held that Ms. Schweigert lacked a secured claim under Montana law, it did not err

in sustaining Mr. Schweigert's objection to her proof of claim or in confirming his Chapter 13 plan.

Accordingly, IT IS ORDERED that the judgment of the bankruptcy court that Ms. Schweigert lacked a secured claim under Montana law is AFFIRMED.

IT IS FURTHER ORDERED that the bankruptcy court's sustainment of Mr. Schweigert's objection to Ms. Schweigert's proof of claim and conformation of Mr. Schweigert's Chapter 13 plan is AFFIRMED.

DATED this 11th day of February, 2021.

Dana L. Christensen, District Judge
United States District Court